Reese, J.
delivered-the opinion of the court.
Blevins sued Morrow for the seizure and destruction of two barrels of whiskey and a keg of brandy. Morrow pleaded the general issue, and,, also, that at the time of the alledged trespass he was an officer of the United States army, in the Cherokee nation of Indians, under the command of Brig- Gen. Wool, to whom the President of the United States had assigned the command of the public forces in that nation; that the plaintiff, in violation of the laws of the United States, had brought said whiskey and brandy within the limits of the Cherokee nation of Indians, and was employed in vending and retailing the same to the Indian population without license or permission; and that *225 the defendant, acting under the orders of Gen. Wool and in obedience to his command, seized and destroyed the said spirituous liquors, &c. This plea was demurred to, and the demurrer sustained by the Circuit Court. And the only question here is, whether the judgment of the Circuit Court, in that respect, be correct. It has not been denied in argument that the act imputed to the defendant was fully justified by the provisions of the act of Congress of 1802, called the intercourse act, the act of Congress, of July 1832, and especially by those of the act of Congress of J une 1834. Nor has the power and constitutional competency of Congress to enact such laws been at all called in question, as, indeed, it could not be, successfully; the power being not only expressly conferred, but being in its nature exclusive, and, therefore, in any conflict with State legislation, entitled to supremacy and control. Nor has it been contended, in argument, that the attempt by the legislature of Tennessee, in 1833, to subject individual Cherokees within the limits of Tennessee to criminal responsibility for certain specified offences, or the case of Forman vs. The State, arising therefrom, can have any legitimate influence and operation upon the determination of the question in this record. The only argument by which it has been attempted here to maintain the judgment of the Circuit Court is, that prior to the alledged act of trespass, the treaty of New Echoto, of December 1835, and 1836, had been made and ratified; that upon the ratification of that treaty the Cherokees ceased to exist as a nation east of the Mississippi, and the laws of the United States to regulate commerce and intercourse with them, ceased to have any relation or application to the tribe within the limits of Tennessee. On the other side this effect is utterly denied to that treaty. The transaction in question happened within two years of the formation of the treaty. The 16th article of the treaty contains a stipulation, that the Cherokees shall remove to their new homes within two years from the ratification of the treaty; and that during such time the United States shall protect and defend them in their possessions and property, and free use and occupation of the same. Certainly there is nothing in the fact of the ratification of this treaty, or in the situation of the Cherokees *226 during the two years before, removal, to abrogate or suspend those laws of Congress to which we have referred, intended to protect the safety, to guard the morals, and to secure the peace of the Indians. On- the contrary, the new circumstances in which they were placed by the treaty, and the new relations to the white citizens likely to grow out of it, in the process of removal, made the existence ‘ arid' enforcement ■ of' these • intercourse laws, and police regulations of the United States more necessary than"ever' to their peace'and "safety. ■ The Indians did not lose their character of tribe or nation, and become a mass of unorganized individuals eo instcmti, upon the ratification of the treaty. Their organization during the two years was just the same as before/and the intercourse- laws of the United States were unaffected and unimpaired by the condition- of things after the treaty.
We are of opinion, therefore, that the plea is. good, and that the demurrer to it should -have -been overruled; and we give judgment accordingly. .